IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

CASANDRA DESSEL,

    Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.

No. C15-1026

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.    *INTRODUCTION* ................................. 2

II.   *PRINCIPLES OF REVIEW* ......................... 2

III.  *FACTS* ......................................... 4
    *A.*   *Dessel's Education and Employment Background* ........... 4
    *B.*   *Administrative Hearing Testimony* ...................... 4
        *1.*   *Dessel's Testimony* ............................. 4
        *2.*   *Vocational Expert's Testimony* .................... 5
    *C.*   *Dessel's Medical History* ............................. 6

IV.  *CONCLUSIONS OF LAW* ........................... 9
    *A.*   *ALJ's Disability Determination* ....................... 9
    *B.*   *Objections Raised By Claimant* ...................... 11
        *1.*   *Credibility Determination* ....................... 11
        *2.*   *Dr. Gibson's Opinions* .......................... 14
        *3.*   *RFC Assessment and Hypothetical Question* ............ 16

V.   *CONCLUSION* ................................... 20

VI.  *ORDER* ........................................ 20

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Casandra Dessel on August 4, 2015, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits.[1] Dessel asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Dessel requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014) (quoting *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2011)).

---

[1] On October 9, 2015, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

2

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Draper v. Colvin*, 779 F.3d 556, 559 (8th Cir. 2015) ("'If substantial evidence supports the Commissioner's conclusions, th[e] court does not reverse even if it would reach a different conclusion, or merely because substantial

evidence also supports the contrary outcome.' *Travis v. Astrue*, 477 F.3d 1037, 1040 (8th Cir. 2007)."); *Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

#### A. Dessel's Education and Employment Background

Dessel was born in 1991. She is a high school graduate. In school, she was enrolled in special education classes for math and reading. In the past, Dessel worked as a telemarketer and housekeeping cleaner.

#### B. Administrative Hearing Testimony

##### 1. Dessel's Testimony

At the administrative hearing, the ALJ inquired about Dessel's difficulties with headaches. Dessel responded:

> I get it -- the headaches could be every day. It depends on the severity. I could have a small headache and it would last a couple of days, just there, or the migraines I get at least two a month where I'm in bed, lights off, and I was on the Hydrocodone for a while to take the headache edge away and to get rid of it.

(Administrative Record at 35-36.) Dessel also testified she has low back pain with twisting and turning. She indicated that her back pain sometimes makes sitting for long periods of time difficult. Dessel is also blind in her right eye, but can see with her left eye. The ALJ also questioned Dessel about her comprehension and ability to focus:

> Q: Do you have any problem concentrating on things, reading and following what you read?
> A: Yes, I do.
> Q: What's that all about?

4

> A: I have -- my comprehension on things is bad. If somebody explains something in a way that I don't understand, it has to be explained in a way that I do understand, or I won't comprehend or understand it at all. And my ability to focus is -- I don't focus quite well either.

(Administrative Record at 49.)

Dessel's attorney also questioned Dessel. Dessel's attorney inquired whether Dessel would have difficulty working at a suitable pace. Dessel stated she did have difficulty working at an appropriate pace. Dessel testified, for example, that a supervisor at a cleaning job told her she was too slow and needed to pick up her pace.

### 2. Vocational Expert's Testimony

At the administrative hearing, the ALJ provided vocational expert Vanessa May with a hypothetical for an individual with:

> no exertional limitations, but does not have vision in the right eye, has appropriate visual acuity in the one eye only, monocular vision. This person is capable of simple, routine tasks, and no work at a production rate pace.

(Administrative Record at 52.) The vocational expert testified Dessel could not perform her past work, but could perform the following jobs: (1) laundry folder, (2) photocopy machine operator, and (3) retail marker. The ALJ provided the vocational expert with a second hypothetical that was identical to the first hypothetical except that the individual required sedentary work. The vocational expert testified Dessel could perform the following sedentary jobs: (1) document preparer, (2) order clerk, and (3) telephone quotation clerk. Lastly, the ALJ inquired:

> Q: . . . And let's take any of those two hypothetical that I gave you, if the person would be unable to attend work, I mean, actually unable to go to work at unscheduled times two days a month, would that affect the ability to do those jobs or any other jobs?

>   A: Yes, I believe that with unskilled jobs that missing work two times a month would most likely end up with that person losing their job.
>   Q: Okay. So basically no work?
>   A: Right.

(Administrative Record at 53.)

### C. Dessel's Medical History

On October 8, 2012, Dessel was referred by Disability Determination Services ("DDS") to Dr. Keith F. Gibson, Ph.D., for a mental status examination. Dr. Gibson reviewed Dessel's health background as follows:

> [Dessel] is applying for benefits due to damage caused by shaken baby syndrome. She is legally blind in her right eye and is experiencing problems with her short-term memory. "I say or do something and forget what I've done or said two seconds later. I get things mixed up right after I say them. My mother-in-law calls me to remind me about my appointments." [Dessel] is also suffering from incapacitating "abnormal" headaches. The headaches start in her eyes which is unusual. A CT scan was negative. She has been on numerous trials of different medications to try to alleviate headache pain but effective treatment is yet to be discovered.

(Administrative Record at 241.) Dr. Gibson also reviewed Dessel's activities of daily living:

> On a typical day, [Dessel] gets up midmorning unless she has had a difficult time with her headaches, in which case, she does not get up until 2:00 or 3:00 in the afternoon. A typical day involves doing errands and paying bills. . . . She and her husband spend time with friends. She tries not to be home during the day, trying to stay active, going for walks at local recreational areas like Heritage Trail. Her time is spent making preparations for the arrival of the baby. She and spouse share cooking responsibilities. In home pastimes include television and spending time on her laptop computer. She is typically in bed between midnight and 2:00 a.m. She is currently experiencing a lot of difficulty with sleep onset.

6

(Administrative Record at 242.) Upon examination, Dr. Gibson diagnosed Dessel with chronic adjustment disorder with depressed mood, learning disorder, legal blindness in her right eye due to shaken baby syndrome, chronic back pain, refractory headaches, and intermittent undiagnosed severe chest pains with difficulty breathing. Dr. Gibson opined that:

> Based on her performance on the Mini Mental Status Exam, [Dessel] may have difficulty remembering and understanding instructions, procedures, and locations in a work setting. Physical health problems, especially refractory delinquent headaches, combined with decreased stamina and easy fatigability, significantly impair [Dessel's] capacity to maintain attention, concentration, and pace sufficient for full-time gainful employment. Her capacity to interact appropriately with others in a work environment appears to be adequately retained. Her judgment is intact. She appears to be making reasonable decisions for herself on a day-to-day basis. Memory deficits interfere with her cognitive capacity to respond adaptively and flexibly to changes in the work place.

(Administrative Record at 244.)

On October 10, Dessel was referred by DDS to Dr. J. Bybee, M.D., for a physical disability examination. Dessel alleged disability secondary to blindness in her right eye, headaches, and pelvis problems. Upon examination, Dr. Bybee found Dessel's "range of motion was normal at all the routine tested joints. Her balance and gait are normal."[2] Dr. Bybee diagnosed Dessel with right eye blindness, headaches, pelvis problems without current symptoms, and trouble concentrating at times. Dr. Bybee concluded:

> It does not appear that there would be limitations on lifting and carrying[,] standing and moving about[,] walking or sitting in an eight-hour day nor would there be problems stooping, climbing, kneeling and crawling or handling objects.

---

[2] Administrative Record at 247.

(Administrative Record at 247.)

In a letter dated December 4, 2012, Dr. Robert Ricketts, D.C., Dessel's treating chiropractor informed the Social Security Administration that he had treated Dessel five times while she was between 3 and 4 months pregnant. Dr. Ricketts noted "[a]ssessing what is a disability and what is simply a result of being pregnant is very difficult."[3] Dr. Ricketts opined Dessel: (1) could lift no more than 25 pounds at one time, and no more than 10 pounds for a time greater than an hour; (2) could stand for no more than 60 minutes at one time; (3) could walk unlimitedly; (4) could sit no more than one hour without a stretching or walking break; and (5) would be restricted in stooping, climbing, kneeling, and crawling.

On November 15, 2013, Dessel met with Dr. Marsha Horwitz, M.D., to establish management of her "longstanding headache syndrome." In reviewing Dessel's headache history, Dr. Horwitz noted:

> [Dessel] is a 22-year-old female with a lifelong history of headaches. She reports having for the most part daily headaches. The headaches may be day in and day out. On other occasions she has episodic head pain during the day. There are no particular triggers. The headaches begin frontally or posteriorly and then become generalized. The headaches are often throbbing in characteristic. The headaches may be mild in degree and just annoying or may be more severe, for which she will remain in bed. Occasional nausea; no vomiting. The more severe headaches are aggravated by light. No additional symptoms.

(Administrative Record at 344.) Upon examination, Dr. Horwitz diagnosed Dessel with chronic benign headaches with possible component related to hydrocodone overuse. Dr. Horwitz recommended Dessel discontinue use of hydrocodone and prescribed amitriptyline to treat her headaches.

---

[3] *Id.* at 249.

8

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Dessel is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014); *Young v. Astrue*, 702 F.3d 489, 490-91 (8th Cir. 2013). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014) (citing *King v. Astrue*, 564 F.3d 978, 979 n. 2 (8th Cir. 2009)); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual

functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010) (quoting *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012) (quoting *Holley v. Massanari*, 253 F.3d 1088, 1093 (8th Cir. 2001)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined Dessel had not engaged in substantial gainful activity since August 1, 2012. At the second step, the ALJ concluded from the medical evidence that Dessel had the following severe impairments: adjustment disorder, headaches, loss of vision in the right eye, and history of learning disorder. At the third step, the ALJ found Dessel did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Dessel's RFC as follows:

> [Dessel] has the residual functional capacity to perform a full
> range of work at all exertional levels but with the following
> nonexertional limitations: no vision in the right eye; simple
> routine tasks; and no work at a production-rate pace.

(Administrative Record at 13.) Also at the fourth step, the ALJ determined Dessel has no past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Dessel could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Dessel was not disabled.

### B. Objections Raised By Claimant

Dessel argues the ALJ erred in three respects. First, Dessel argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Second, Dessel argues the ALJ failed to properly evaluate the opinions of Dr. Gibson, a consultative examining psychologist. Lastly, Dessel argues the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed because they are not supported by substantial evidence and do not properly set forth her credible functional limitations.

#### 1. Credibility Determination

Dessel argues the ALJ failed to properly evaluate her subjective allegations of pain and disability. Dessel maintains the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues the ALJ properly considered Dessel's testimony, and properly evaluated the credibility of her subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v.*

*Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective

testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010).

In his decision, the ALJ addressed Dessel's subjective allegations as follows:

> According to [Dessel's] function report, she has no difficulty with most personal care tasks. Moreover, she prepares meals daily, plays video games, reads, goes grocery shopping, visits friends weekly, and washes dishes and laundry (Exhibit B9E, generally). Such tasks suggest no more than minimal overall difficulties with activities of daily living. Moreover, [Dessel's] ability to leave her home to shop and visit friends regularly similarly suggests no more than minimal restrictions in social functioning. In addition, while [her] concentration, persistence, or pace might be more significantly affected, her abilities to read and play video games suggests that she retains sufficient attention and memory for unskilled work. . . .

> Finally, the undersigned considered [Dessel's] alleged headaches. She contends this condition is the primary obstacle to fulltime work. However, several circumstances undermine the severity she asserts. Although she claims her headaches can render her unable to leave her bed, the undersigned found no reference to emergency care. In fact, [Dessel's] treatment appears limited to relatively few visits to her provider--especially after the application date. Since that time, [she] has had only four encounters for headaches (Exhibits B8F, pages 9, 22 & 55; and B5F, generally). In addition, [Dessel's] reports to her provider have been inconsistent. For example, in November 2013, she reported having daily headaches (Exhibit B8F, page 9). However, just two months earlier, she noted having them only occasionally (Exhibit B8F, page 22). Finally, diagnostic study has failed to show any brain abnormality. A 2009 computed tomography (CT) scan returned normal results (Exhibit B8F, page 55). Given these circumstances, the undersigned finds [Dessel's] headaches are not as severe or prevalent as she claims. Her headaches may, of course, impose some difficulty with sustained attention, concentration, and work pace. As such, she should remain

> capable of unskilled work as described in the previously listed
> residual functional capacity assessment.

(Administrative Record at 16.) The ALJ also thoroughly addressed Dessel's other complaints, including her back and pelvic pain and loss of vision in her right eye.[4]

It is clear from the ALJ's decision that he thoroughly considered and discussed Dessel's treatment history, medical history, functional restrictions, activities of daily living, and use of medications in making his credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Dessel's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Dessel's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Dr. Gibson's Opinions

Dessel argues the ALJ failed to properly evaluate the opinions of Dr. Gibson, a consultative examining source who performed a mental status examination for Dessel. Dessel asserts that the ALJ's reasons for discounting Dr. Gibson's opinions are not

---

[4] *See* Administrative Record at 15 (providing thorough discussion of Dessel's back and pelvic pain and loss of vision in her right eye).

supported by substantial evidence on the record. Dessel concludes this matter should be remanded for further consideration of the opinions of Dr. Gibson.

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(d)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

An ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)).

In his decision, the ALJ addressed Dr. Gibson's opinions as follows:

> Although Dr. Keith Gibson, Ph.D., opined [Dessel's] capacity to maintain attention, concentration, and pace is significantly impaired for fulltime, gainful employment, he based that conclusion, at least in part, on her subjective complaints of physical pain and fatigue. Moreover, Dr. Gibson's own mental status examination yielded a score of 25 out [of] 30 possible points--a performance inconsistent with his eventual opinion. Rather, such a score suggests [Dessel] can perform two and three-step tasks, like those associated with unskilled work. As such, the previously listed residual

> functional capacity assessment makes that accommodation, and
> it provides for no work at a production-rate pace.

(Administrative Record at 16.)

Having reviewed the entire record, and considered the ALJ's discussion of Dessel's subjective allegations, the Court finds that the ALJ properly considered and addressed the opinion evidence provided by Dr. Gibson. Specifically, the ALJ addressed inconsistencies between Dr. Gibson's opinions and the record as a whole. Therefore, the Court concludes that the ALJ properly considered and applied the factors for evaluating a consultative examiner's opinions, and properly addressed Dr. Gibson's opinions. *See Wiese*, 552 F.3d at 731. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3. *RFC Assessment and Hypothetical Question*

Dessel argues that both the ALJ's RFC assessment and the hypothetical questions provided to the vocational expert at the administrative hearing are flawed. Specifically, Dessel argues the ALJ's RFC assessment and hypothetical questions to the vocational expert are incomplete because they do not properly account for all of her impairments and functional limitations. Thus, Dessel contends the ALJ's RFC assessment and hypothetical questions are not supported by substantial evidence in the record. Dessel maintains this matter should be remanded for a new RFC determination based on a fully and fairly developed record, and to allow the ALJ to provide the vocational expert with a proper and complete hypothetical question.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment

must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*, 361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Furthermore, hypothetical questions posed to a vocational expert, including a claimant's RFC, must set forth his or her physical and mental impairments. *Goff*, 421 F.3d at 794. "The hypothetical question must capture the concrete consequences of the claimant's deficiencies." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001) (citing *Taylor v. Chater*, 118 F.3d 1274, 1278 (8th Cir. 1997)). The ALJ is required to include only those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Haggard v. Apfel*, 201 F.3d 591, 595 (8th Cir. 1999) ("A hypothetical question 'is sufficient if it sets forth the

impairments which are accepted as true by the ALJ.' *See Davis v. Shalala*, 31 F.3d 753, 755 (8th Cir. 1994) (quoting *Roberts v. Heckler*, 783 F.2d 110, 112 (8th Cir. 1985).").

In determining Dessel's RFC, the ALJ found:

> Despite [Dessel's] allegations, after consideration of these factors, as well as the observations of the consultative examiners, the undersigned finds the weight of the evidence suggestive of [Dessel's] ability to perform work as described in the previously listed residual functional capacity assessment. Specifically, [Dessel's] failure to seek emergent treatment for her alleged migraines, her activities of daily living, and observations pertaining to her concentration, persistence, and pace capacities suggest she retains the ability to perform unskilled work.

(Administrative Record at 15.) Moreover, the ALJ thoroughly addressed and considered Dessel's medical history and treatment for her complaints, including her difficulties with back and pelvic pain, loss of vision in her right eye, adjustment disorder, and headaches.[5] The ALJ also properly considered and thoroughly discussed Dessel's subjective allegations of disability in making his overall disability determination, including determining Dessel's RFC.[6] The ALJ concluded:

> Overall, [Dessel] asserts the majority of symptoms based on her subjective complaints. There is little objective evidence to corroborate conditions that would correlate to such extreme debilitation and far fewer instances of treatment than that expected of an individual experiencing such severe pain. When considering these circumstances with [Dessel's] activities of daily living and the observations of the consultative examiners, the undersigned finds the weight of the

---

[5] *See* Administrative Record at 15-17 (providing a thorough discussion of Dessel's overall medical history and treatment).

[6] *Id.* at 16-17 (providing a thorough discussion of Dessel's subjective allegations of disability).

18

evidence favors finding [Dessel] capable of work as described in the above-listed residual functional capacity assessment.

(Administrative Record at 16-17.)

Therefore, having reviewed the entire record, the Court finds the ALJ properly considered Dessel's medical records, observations of treating physicians, and Dessel's own description of her limitations in making the ALJ's RFC assessment for Dessel.[7] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes Dessel's assertion that the ALJ's RFC assessment is flawed is without merit.

Similarly, having reviewed the entire record, the Court, again, finds that the ALJ thoroughly considered and discussed both the medical evidence and Dessel's testimony in determining Dessel's impairments and functional limitations.[8] The Court further determines that the ALJ's findings and conclusions are supported by substantial evidence on the record as a whole. Because the hypothetical question posed to the vocational expert by the ALJ was based on the ALJ's findings and conclusions, the Court concludes that the ALJ's hypothetical question properly included those impairments which were substantially supported by the record as a whole. *See Goose*, 238 F.3d at 985; *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004) (an ALJ need only include those work-related limitations that he or she finds credible). Therefore, the ALJ's hypothetical question was sufficient.

---

[7] *Id.* at 15-17 (providing a thorough discussion of the relevant evidence for making a proper RFC determination).

[8] *See* Administrative Record at 15-17.

19

## V. CONCLUSION

The Court finds the ALJ properly determined Dessel's credibility with regard to her subjective complaints of pain and disability. Furthermore, the Court finds the ALJ properly considered and addressed the opinion evidence provided by Dr. Gibson. The Court also finds the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. The ALJ's hypothetical questions to the vocational expert were also sufficient because they properly included those impairments and functional limitations substantially supported by the record as a whole. Accordingly, the Court determines that the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1. The final decision of the Commissioner of Social Security is **AFFIRMED**;
2. Plaintiff's Complaint (docket number 3) is **DISMISSED** with prejudice; and
3. The Clerk of Court is directed to enter judgment accordingly.

DATED this 3rd day of March, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA